

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

David James Connolly,
Plaintiff,

v.

Equifax Information Services LLC,
Defendant.


Case No. 1:26-cv-00310-ADA

JURY TRIAL DEMANDED

# NOTICE OF FILING AND STATUS UPDATE

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff David James Connolly files this Notice of Filing and Status Update and respectfully states as follows:

## I. STATUS OF THE MATTER

1. Plaintiff commenced this action arising from alleged conduct relating to consumer reporting, adverse information retention, institutional data handling, and related matters under the Fair Credit Reporting Act ("FCRA").
2. Service has been completed upon Defendant Equifax Information Services LLC.
3. The parties have commenced discussions concerning discovery scope, scheduling, preservation obligations, electronically stored information ("ESI"), and related procedural matters.
4. Plaintiff anticipates discovery relating to:
   - o   audit trails,
   - o   access logs,
   - o   institutional retention architecture,
   - o   file propagation timing,
   - o   duplicate/recombined file history,
   - o   internal policies and procedures,
   - o   and related systems relevant to the claims and defenses asserted in this matter.
5. Plaintiff further anticipates that protective order considerations, preservation obligations, and ESI management may become relevant during discovery.

1

## II. NOTICE OF FILING OF ATTACHMENTS

Plaintiff files the following materials for informational and procedural purposes relevant to chronology, anticipated discovery scope, preservation issues, and institutional access/audit considerations:

### Exhibit A

Agenda Minutes dated 14 May 2026 reflecting preliminary discussions concerning:

- settlement,
- chronology review,
- discovery scope,
- operational procedures,
- damages and expert discovery,
- ESI,
- preservation,
- protective order considerations,
- and anticipated scheduling matters.

### Exhibit B

Timeline Civil Action No. 26-CV-00310-ADA, providing a chronological summary of relevant factual and procedural events relating to the underlying dispute, regulatory findings, adverse reporting history, file activity, and subsequent proceedings.

### Exhibit C

FCRA Discovery and Attribution Analysis Memorandum, submitted as an analytical and evidentiary framework relevant to:

- discovery scope,
- preservation considerations,
- audit and access log discovery,
- institutional access pathways,
- and potential forensic discovery issues.

Plaintiff submits that the attached materials may assist the Court in understanding the anticipated scope and nature of discovery likely to arise in this matter.



Respectfully submitted,

David James Connolly
Plaintiff Pro Se

Dated: _____

# CERTIFICATE OF SERVICE

I certify that on this _____ day of _____, 2026, a true and correct copy of the foregoing document was served upon all counsel of record in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

David James Connolly

Copies of the referenced exhibits are attached hereto.

3

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

David James Connolly,            Civil Action No. 1:26-cv-00310-ADA

Plaintiff,

v.

Equifax Information Services LLC,

Defendant.

------------------------------------------------------------------

Exhibit A – Agenda Minutes dated 14 May 2026

------------------------------------------------------------------

CONNOLLY V EQUIFAX.

| Agenda Item | Discussion Points | Outcome |
|---|---|---|
| Proposed Settlement Offer | Accept / Decline / Counter Offer | DECLINE. |
| Litigation Timeline | Review and accept or decline chronology and factual sequence | DECLINE. FORMAT. |
| Discovery Scope and Scheduling | 1. Core Liability Discovery<br>2. Policies, Systems, and Operational Procedures<br>3. Damages and Expert Discovery<br>4. ESI<br>5. Preservation | |

"NUISANCE VALUE 3-5,000"

CHANGE TRACKING.

8-9 MONTHS.

— MOTION TO STAY DISCOVERY.

— PROTECTIVE ORDER.

DAVID TO REPLY. MONDAY.

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

David James Connolly,          Civil Action No. 1:26-cv-00310-ADA

Plaintiff,

v.

Equifax Information Services LLC,

Defendant.

------------------------------------------------------------------

Exhibit B – Timeline Civil Action No. 26-CV-00310-ADA

------------------------------------------------------------

**Timeline Civil Action No. 26-CV-00310-ADA**

**24 August 2017** — A court made a sequestration order ex parte declaring David Connolly bankrupt. AFSA subsequently reported the bankruptcy to Equifax, which recorded the information on the complainant's credit file.

**12 December 2017** — The bankruptcy was annulled by court order following application by David Connolly.

**December 2017**

- AFCA later found that Equifax received notification from AFSA that the sequestration order had been set aside by a court. AFCA determined the bankruptcy listing should have been removed immediately upon notification.
- Freedom Of Information records provided by AFSA confirm Equifax received notice

**December 2017 – March 2025 —**

- Bankruptcy information remained on David Connolly's Equifax credit file for > than 7 years after AFCA later determined it should have been removed.
- This interpretation is consistent with Australian and International Law

**25 February 2020 – 24 May 2022 —**

- Equifax records showed six file accesses by a debt collection firm while the bankruptcy information remained active on the complainant's credit file.
- This activity is inconsistent with the Financial State of Affairs provided to the Federal Circuit Court of Australia

**5 October 2022** — Equifax confirms that it has multiple credit files for David Connolly

**5 October 2022** — David Connolly requested a copy of his credit file, it did not contain the bankruptcy information.

**12 October 2022** — Equifax recombine the credit files.

**12 October 2022** — AFCA later noted that "an earlier opportunity to identify the error was missed" because the temporary duplicate file did not contain the bankruptcy information.

**5 October 2022 – 28 February 2025 —**

- AFCA identified four credit enquiries involving banks relating to credit card and personal loan applications while the bankruptcy listing remained on the complainant's credit file.

**27 February 2025** — AFCA recorded two file accesses from non-bank personal loan providers and a "prequal" file access associated with a bank personal loan prequalification process.

**28 February 2025** — A declined credit application alerted David Connolly to the continued presence of adverse bankruptcy information on the Equifax credit file.

**28 February 2025** — AFCA records also showed multiple "public access" file entries associated with David Connolly

**March 2025** — David Connolly lodged a complaint with Australian Financial Complaints Authority concerning the continued publication of annulled bankruptcy information by Equifax.

**5 March 2025** — Additional "public access" file entries were recorded in relation to complainant credit file access activity.

**12 March 2025** — Equifax removed the bankruptcy information from David Connolly's credit file after the issue was raised. AFCA later found the information had remained on file for more than seven years longer than it should have.

**11 April 2025** — AFCA Complaint Manager Ashleigh Lakomy spoke with David Connolly regarding the complaint and ongoing review process.

**11 April 2025** — As at this date, the AFCA complaints portal reportedly reflected approximately "1 week to finalize process."

**11 April 2025 – 30 January 2026**

- AFCA and Equifax share information leading to a determination.

**30 January 2026** — AFCA issued Determination Case 12-25-218310. AFCA found Equifax failed to promptly remove the bankruptcy information after notification from AFSA in December 2017. Citing:

- the duration of the incorrect reporting,
- the number of credit applications affected,
- and the evident stress experienced by the complainant

**February 2026** – Complaint filed with United States District Court, Western District of Texas

**11 February 2026** – U.S Department of Justice US Marshals Service complete Service of Equifax

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION


David James Connolly,                    Civil Action No. 1:26-cv-00310-ADA

Plaintiff,


v.


Equifax Information Services LLC,

Defendant.


------------------------------------------------------------------


Exhibit C – FCRA Discovery and Attribution Analysis Memorandum


------------------------------------------------------------------

6

# FCRA Probability Attribution Memorandum

## Prepared For

Potential litigation and regulatory use in a United States Fair Credit Reporting Act (FCRA) matter involving historical reporting conduct, adverse information persistence, and attribution analysis.

# Executive Summary

This memorandum presents a structured probability model supporting the proposition that a whistleblower complaint dated 4 January 2018 was more likely than not generated by an employee of Equifax, or through an internal Equifax information pathway.

The model does not assert absolute proof of identity.

Instead, it applies a weighted circumstantial evidence framework consistent with civil litigation standards to evaluate competing hypotheses. Through that model, Equifax-origin represents approximately 85% of the modeled probability space.

The analysis relies upon:

- Documentary chronology
- Regulatory records
- AFCA findings against Equifax
- Australian insolvency record timing
- Information-access exclusivity assumptions
- Behavioral timing analysis
- Institutional data-retention failure findings

The conclusion of this memorandum is that, on the presently available evidence, the Equifax-origin hypothesis is materially more probable than alternative explanations.

# Purpose of Memorandum

This memorandum is intended to:

1. Present a structured evidentiary model suitable for FCRA-related litigation.
2. Demonstrate that Equifax is uniquely positioned to confirm or disprove the attribution theory.
3. Support discovery requests directed toward access logs, audit trails, and employee query activity.
4. Establish a reasoned basis for requesting preservation and production of internal records.
5. Provide a defensible framework for arguing institutional responsibility for data misuse or misuse of retained adverse information.

# Relevant Legal Context

## FCRA Framework

Under the Fair Credit Reporting Act (15 U.S.C. §1681 et seq.), consumer reporting agencies are required to:

- Follow reasonable procedures to assure maximum possible accuracy of consumer information.
- Investigate disputed information.
- Correct inaccurate or obsolete records.
- Maintain reasonable controls over dissemination of consumer data.
- Restrict employee misuse or unauthorized access to consumer information.

If a consumer reporting agency maintained stale or legally invalid adverse information, and that information was accessed or used internally in a manner causing harm, the issue becomes relevant to:

- Negligent compliance under 15 U.S.C. §1681o
- Willful noncompliance under 15 U.S.C. §1681n
- Improper disclosure or access
- Deficient supervisory controls
- Failure to maintain auditability

# Source Documents Considered

## 1. AFCA Determination

Independent finding that Equifax retained bankruptcy information after receiving notice of annulment.

Key findings include:

- Equifax received notice from AFSA in December 2017.
- Equifax failed to remove bankruptcy information.
- Bankruptcy status remained visible until March 2025.
- Equifax's conduct was found to be erroneous.

## 2. AFSA Freedom of Information Materials

Records obtained under FOI demonstrate:

- AFSA possessed the court order setting aside the sequestration order on 12 December 2017.
- Internal AFSA correspondence existed around the same period.
- Regulatory records had been updated prior to the whistleblower complaint.

## 3. Whistleblower Complaint

Letter dated 4 January 2018 sent to Australian regulatory authorities.

The complaint:

- Relied upon sequestration order information.
- Assumed continued legal significance of the order.
- Did not reference the set-aside.
- Was submitted anonymously.

# Chronology

| Date | Event |
| --- | --- |
| 24 August 2017 | Sequestration order made |
| 12 December 2017 | Court set aside sequestration order |
| December 2017 | AFSA updated records |
| Mid-December 2017 | Australian Christmas shutdown period began |
| 2 January 2018 | Typical office return period |
| 4 January 2018 | Whistleblower complaint sent |
| March 2025 | Equifax removed bankruptcy information |

# Working Assumption

For purposes of this analysis, the following assumption is adopted:

In Australia during the relevant period, Equifax was the only organization with access to the full combination of databases required to compile the complaint in the form submitted.

This assumption can later be tested through discovery.

# Competing Hypotheses

## H1 — Equifax Employee Origin

The complaint was generated by an Equifax employee with access to retained adverse records.

## H2 — Original Sequestration Actor

The complaint originated from the party who obtained the sequestration order or a related actor.

## H3 — Unrelated Third Party

The complaint came from an unrelated external individual using public information.

## H4 — Indirect Equifax Information Source

The complaint came from a third party using information sourced from Equifax.

# Evidence Weighting Model

Each factor is scored according to:

1. Strength of evidentiary support.
2. Consistency with each hypothesis.
3. Relative explanatory power.

Weights are assigned on a 100-point scale.

# Weighted Factors

| Factor | Weight | Reasoning | Favored Hypothesis |
|---|---|---|---|
| Exclusive access to required data environment | 30 | Strongly narrows origin pool | H1 |
| AFSA had updated status before complaint | 10 | Complaint relied on outdated status | H1 / H4 |
| Equifax later confirmed to retain stale data | 20 | Institutional persistence established | H1 |
| Complaint timing (4 Jan 2018) | 10 | Consistent with post-holiday office return | H1 |
| Delay after original order | 10 | Weakens tactical-litigant theory | H1 |
| Records-driven complaint style | 8 | Suggests institutional access | H1 / H4 |
| Omission of set-aside | 7 | Consistent with stale database reliance | H1 |
| Anonymous whistleblower framing | 5 | Compatible with insider anonymity | H1 / H4 |

# Weighted Outcome

| Hypothesis | Score |
|---|---|
| H1 — Equifax Employee | 68 |
| H4 — Equifax-derived Third Party | 17 |
| H2 — Original Sequestration Actor | 10 |
| H3 — Unrelated Outsider | 5 |

Based on the weighted outcome, the presently available evidence indicates that the most probable origin of the whistleblower complaint was either:

(a) an Equifax employee directly, or
(b) a third party using information sourced from Equifax systems.

Of the identified hypotheses, direct Equifax employee origin remains the single strongest explanatory model.

Or viewed in light of the broader complaint, based on the weighted analysis, Equifax-origin — whether through a direct employee or Equifax-controlled information pathway — represents approximately **85% of the modeled probability space.**

# Interpretation

The weighted analysis demonstrates that the Equifax employee hypothesis is materially stronger than competing explanations.

This conclusion arises because:

- The complaint was sent after regulatory correction occurred.
- Equifax later admitted through AFCA findings that stale bankruptcy information remained.
- Timing aligns with post-holiday institutional access.
- The complaint appears derived from records rather than live litigation chronology.
- Alternative hypotheses require more assumptions and explain fewer facts.

# Institutional Burden of Clarification

Equifax is uniquely positioned to confirm or rebut this model.

Only Equifax would likely possess:

- Employee access logs
- File query histories
- Internal audit trails
- Data export history
- Access privilege records
- Internal workflow records
- Propagation timing documentation

Accordingly, Equifax's refusal or inability to produce relevant records may become evidentially significant.

# Suggested Discovery Requests

The following requests would directly test the attribution model:

1. Access logs relating to the subject credit file between 1 December 2017 and 31 January 2018.
2. Audit records showing who queried or accessed bankruptcy data.
3. Internal policy governing employee access to insolvency records.
4. Documentation showing AFSA-to-Equifax update timing.
5. Metadata reflecting internal generation of reports or exports.
6. Retention architecture showing how stale bankruptcy information remained visible.
7. Internal investigations concerning misuse of consumer file access.

# Evidentiary Position

This memorandum does not assert certainty.

Instead, it establishes the following proposition:

Based on chronology, institutional findings, persistence of stale adverse information, and the exclusive-access premise, the hypothesis that an Equifax employee generated or sourced the whistleblower complaint is more probable than any identified alternative explanation.

# Litigation Utility

This memorandum may support:

- FCRA pleadings
- Discovery motions
- Preservation demands
- Rule 26 requests
- Adverse inference arguments
- Motion practice involving access logs
- Demonstrating the need for forensic disclosure

# Final Conclusion

On the presently available evidence, the Equifax-origin hypothesis is the strongest explanatory model.

The probability model indicates that the whistleblower complaint is most consistent with origin inside Equifax, or through an Equifax-controlled information pathway.

The absence of internal disclosure or audit evidence from Equifax would not weaken the theory; rather, it reinforces the proposition that Equifax remains the only institution capable of disproving it.

# Disclaimer

This memorandum is an evidentiary and analytical framework only.

It is not a judicial finding, expert opinion, or final attribution determination.

The model should be updated if additional discovery, metadata, access logs, or internal records become available.